**E-FILED**
Tuesday, 29 January, 2008  09:06:22 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF ILLINOIS

**SANDIE STARNS, pro se,**

**PLAINTIFF,**

**VS.**                                            **04-1143**

**HEALTH PROFESSIONALS, LTD.,**
**and STEVEN DOUGHTY,**

**DEFENDANTS.**

## ORDER ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Sandie Starns, is an inmate of the Illinois Department of Corrections (IDOC). He claims under 42 U.S.C. §1983 that the defendants, Health Professionals, Ltd., a health care contractor for IDOC, and Steven Doughty, M.D. were deliberately indifferent to his serious medical need in violation of the Eighth Amendment to the United States Constitution. The occurrences complained of took place at the Menard Correctional Center between 8:55 p.m., March 27, 2002 and 5:22 p.m., March 29, 2002, a period of 47 hours and 27 minutes .  The defendants have moved for summary judgment.  The court has jurisdiction under 28 U.S.C. §§1331, 1334.

In the course of the development of this case the court concluded that there were genuine issues of material fact and therefore denied the defendants' first motion for summary judgment. However, on November 14, 2007, at the pretrial conference by video conference,[1] it became apparent to the court that there were really no genuine issues of material fact.  It became equally apparent that a trial would be cumbersome, with witnesses scattered across the state, expensive, and would result in judgment as a matter of law for the defendants.  The defendants were directed to renew their motion for summary judgment.

SUMMARY JUDGMENT

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);*Fed. R. Civ. P.56©; Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that

---

[1]A transcript of the pretrial conference has been ordered from the court reporter to be filed in the record.

there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## UNCONTESTED FACTS

The plaintiff in his response to the motion does not present any facts that are material or in contradiction of the uncontested facts set out by the defendants in their memorandum in support of their motion. The court, therefore, has adopted the defendants statement of uncontested facts.

**From the deposition of the defendant, Steven Doughty, Exhibit A [73]:**

1.  Dr. Doughty has been a licensed physician in the State of Illinois since 1977. (Doughty Affidavit).
2.  Dr. Doughty reviewed the Plaintiff's State of Illinois - Department of Corrections Medical Progress Notes from March 27, 2002 through April 1, 2002. (Doughty Affidavit). These records are the type of records which physicians reasonably rely upon in forming their diagnoses and opinions regarding the care and treatment of patients. (Doughty Affidavit).
3.  Based upon his education, experience and training, common symptoms of diabetes include frequent urination, excessive thirst, extreme hunger, unusual weight loss, increased fatigue, irritability and blurry vision. (Doughty Affidavit).
4.  Dr. Doughty first examined the Plaintiff on March 27, 2002 at 8:55 p.m. (Doughty Affidavit). The Plaintiff complained of abdominal pain accompanied by nausea and vomiting. (Doughty Affidavit). He assessed the Plaintiff suffered from viral gastroenteritis.

(Doughty Affidavit).  The symptoms as presented were not specific and based upon his education, experience and training did not suggest a diagnosis of diabetes. (Doughty Affidavit).

5.      Dr. Doughty next saw Plaintiff on March 28, 2002 at 2:42 p.m. when the inmate continued to complain of nausea and vomiting and abdominal pain.  (Doughty Affidavit).  Dr. Doughty assessed the Plaintiff continued to suffer from viral gastroenteritis and ordered a flat and upright x-ray of Plaintiff's abdomen to rule out an impacted intestine.  (Doughty Affidavit).  The symptoms as presented were not specific and based upon his education, experience and training did not suggest a diagnosis of diabetes.  (Doughty Affidavit).  The Plaintiff was placed on medical observation. (Doughty Affidavit).

6.      Dr. Doughty admitted the Plaintiff to the infirmary at 7:52 a.m. on March 29, 2002 complaining of nausea and vomiting and constipation.  (Doughty Affidavit).  The admitting diagnosis was constipation (severe constipation) and hypertension. (Doughty Affidavit).  The symptoms as presented were not specific and based upon his education, experience and training did not suggest a diagnosis of diabetes.  (Doughty Affidavit).  A chemical screen of Plaintiff's blood was ordered to rule out other medical conditions.  (Doughty Affidavit).

7.      At 5:08 p.m. on March 29, 2002, Plaintiff was seen lying on the floor moaning.  (Doughty Affidavit).  A fruity odor was detected on Plaintiff's breath.  (Doughty Affidavit).  Plaintiff's blood sugar level was checked with an Accu-Check meter, which read high. (Doughty Affidavit).  The high reading may have resulted from the Plaintiff eating or drinking. (Doughty Affidavit).  The Plaintiff was still clinically stable and his vital signs were not abnormal. (Doughty Affidavit).  Dr. Doughty responded to the Plaintiff's elevated blood sugar reading by administering a dose of regular insulin.  (Doughty Affidavit).

8.      At 5:22 p.m. on March 29, 2002, Dr. Doughty believed the Plaintiff to be ketotic and ordered the Plaintiff be transferred to Chester Memorial Hospital for further evaluation and treatment. (Doughty Affidavit).

9.      Based upon his education, training and experience, Dr. Doughty believes there is no reasonable basis to theorize the Plaintiff will have any residual effects.  (Doughty Affidavit). If the Plaintiff has any residual effects, they will be the result of the disease of diabetes and not the result of the analysis of various symptoms that were presented between March 27, 2002 and the Plaintiff's transfer to Chester Memorial Hospital on March 29, 2002.  (Doughty Affidavit).

**Plaintiff's State of Illinois - Department of Corrections Medical Progress Notes from March 27, 2002 through April 1, 2002, Exhibit B [73] reveal the following facts:**

1.      The Plaintiff was seen by Dr. Doughty on March 27, 2002 at 8:55 p.m. (Medical Progress Notes).  The plaintiff complained of nausea and vomiting and abdominal pain.  (Medical Progress Notes).  The Plaintiff presented no other complaints. (Medical Progress Notes).  Dr. Doughty assessed the Plaintiff suffered from viral gastroenteritis and ordered Plaintiff to not drink milk or consume milk products, to drink fluids, prescribed Pepto Bismal and Tylenol and to return in one week.  (Medical Progress Notes).

2.      The Plaintiff was brought back to the health care unit with continued complaints of nausea and vomiting with abdominal pain on March 28, 2002 at 2:42 p.m.  (Medical Progress Notes).  Dr. Doughty assessed the Plaintiff continued to suffer from viral gastroenteritis and

ordered a flat and upright x-ray of Plaintiff's abdomen.  (Medical Progress Notes).

3.      On March 29, 2002 at 7:52 the Plaintiff is admitted to the infirmary by Dr. Doughty for continued complaints of nausea and vomiting with constipation. (Medical Progress Notes). Dr. Doughty assessed the Plaintiff suffered from obstipation (severe constipation) and hypertension, prescribed the Plaintiff medication and ordered a chemical screen of Plaintiff's blood.  (Medical Progress Notes).

4.      At 5:08 p.m. on March 29, 2002, Plaintiff was seen lying on the floor moaning. (Medical Progress Notes).  A fruity odor was detected on Plaintiff's breath and Dr. Doughty was called to the floor.  (Medical Progress Notes).  Plaintiff's blood sugar level was checked with an Accu-Check meter, which read "High". (Medical Progress Notes).  Dr. Doughty assessed the Plaintiff may be suffering from either hyperglycemia or ketosis. (Medical Progress Notes).

5.      Dr. Doughty responded to the Plaintiff's elevated blood sugar reading by administering a dose of eight (8) units of regular insulin to try and reduce the Plaintiff's blood sugar level. (Medical Progress Notes).

6.      At 5:22 p.m. on March 29, 2002, Dr. Doughty believed the Plaintiff to be ketotic and ordered the Plaintiff be transferred to Chester Memorial Hospital. (Medical Progress Notes).


**From the deposition of the plaintiff, Sandie Starns, Exhibit C [73]:**

1.      The Plaintiff was examined by Dr. Doughty at about 7:30 p.m. or 8:00 p.m. on March 27, 2002 because of complaints of dizzy spells, vomiting and constipation. (Sandie Starns Dep. PP. 20-22).  Dr. Doughty examined the Plaintiff and told the Plaintiff he had a stomach virus. (P. 27).  Dr. Doughty gave Plaintiff Pepto Bismal and Tylenol. (P. 23).

2.      On March 28, 2002, the Plaintiff was taken on a stretcher to the health care unit by two correctional officers, where he was given an x-ray.  (P. 28).

3.      After receiving an x-ray of his stomach, the Plaintiff passed out and the next thing he remembers was waking up at Chester Hospital. (P. 29).

4.      The Plaintiff believes Dr. Doughty did "nothing" (P. 52), specifically claiming Dr. Doughty did not check his blood pressure or run other tests the Plaintiff believed should have been administered. (P. 42).  The Plaintiff believes he was not given a proper examination by Dr. Doughty. (P. 68).

5.      The Plaintiff claims he has suffered an injury to his vision by claiming there is something wrong in the back of his eyes even though he cannot identify the injury.  (P. 76).  The Plaintiff acknowledges, however, that the optometrist examinations show everything within normal limits. (P. 76).

6.      The Plaintiff also claims his ankles swell and that his ankles never swelled before the diabetes diagnosis.  (P. 78). No doctor has ever told him, however, that his injuries are the result of the 30-hour period between his first contact with Dr. Doughty and the diagnosis of diabetes. (P. 80).


DISCUSSION

Deliberate indifference to a serious injury or medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). The injury or need must be objectively serious, *and* the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88. 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d at 593 (2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman*, 241 F.3d at 845, *quoting Zentmyer v. Kendall County* 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997)). An objectively serious condition also presents itself if "'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez*, 111 F.3d at 1373. The subjective component (deliberate indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The prisoner must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn*, 251 F.3d at 593, *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmyer*, 220 F.3d at 811. A prisoner is not required to show that he or she was "literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)(jury could find deliberate indifference, "[i]f knowing that a patient faces a serious risk of appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell."). Deliberate indifference may also be inferred "when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Pardue*, 94 F.3d 254, 261-62 (7th Cir. 1996); *see also Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)(deliberate indifference may be established if "response so inadequate that it demonstrated an absence of professional judgment, that is, that nominally competent professional would not have so responded under the circumstances."). However, malpractice or disagreement with a doctor's treatment decisions cannot be the basis for an Eighth Amendment challenge. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). A prison doctor's decision not to follow an outside specialist's recommendations may, however, raise an inference of deliberate indifference. *Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004).

The court agrees with the defendants that Dr. Doughty did not display indifference to the plaintiff's physical complaints when he first presented himself to the doctor on March 27th. The symptoms and diagnosis are set out in the undisputed facts and as those symptoms progressed Dr. Doughty recognized the symptoms of diabetes, administered insulin, and transferred the plaintiff to the hospital for treatment. Nothing in the facts suggests that Dr. Doughty's treatment caused any injury to the plaintiff. No medical evidence supports the idea that any of Starn's present conditions may have been caused by the course of treatment he received from Dr. Doughy. In rebuttal to the uncontested facts, the plaintiff offers only his own conclusory statements that the doctor should have recognized the existence of diabetes sooner than he did. Starns' claims are unsupported by any medically based evidence and are suppositions that his continuing problems with diabetes are somehow related to the forty-seven and a half hours he was under Dr. Doughty's care. No issue of

material fact exists that could lead to the conclusion of deliberate indifference by the defendant Doughty and he is entitled to summary judgment.

Private corporations acting under color of state law (as Health Professionals presumably was) are treated as municipal entities for purposes of 42 U.S.C. § 1983. *Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n. 6 (7th Cir. 2002).  Health Professionals cannot be held liable for the constitutional violations of its employees under a theory of *respondeat superior. Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).   Liability would attach to Health Professionals only if 1) an express policy caused a constitutional deprivation; 2) a widespread practice existed "so permanent and well-settled as to constitute a custom or usage within the force of law"; or 3) a person with "final policy-making authority" caused a constitutional deprivation. *Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 816 (7th Cir. 2001), *citing McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).  There is absolutely nothing in the record that could support a finding of an express policy or widespread practice of deliberate indifference to serious medical needs of Menard's inmates.   Health Professionals is also entitled to summary judgment.

IT IS THEREFORE ORDERED THAT:

1.      The defendants' motion for summary judgment [73] is granted.

2.      The clerk is directed to enter judgment in favor of the defendants and each of them and against the plaintiff.  The parties shall bear their own costs.

3.      If the plaintiff wishes to appeal from this judgment he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

4.      The case is terminated and any pending matters not ruled upon by the court are rendered moot by this final order.

Enter this ___29th_____  day of January 2008.


**s\Harold A. Baker**
_____
Harold A. Baker
United States District Judge

6